UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING | ) ) ) ) ) ) ) | ML No: 22-1410 |

Reference:   DOJ Ref. # CRM-182-85032

AMENDED[1] APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Ecuador.  In support of this application, the United States asserts:

RELEVANT FACTS

1.    The Central Authority of  Ecuador, the Attorney General's Office, submitted a request for assistance (the Request) to the United States, pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters, Aug. 27, 1992 – Feb. 28, 2006, S. Treaty Doc. No. 105-25 (the Treaty).

---

1 This amended application is being filed because undersigned counsel did not include another account number for Mercury.  Paragraph 11 has been revised to include two account numbers.

2. As stated in the Request, the Provincial Prosecutor's Office of Pichincha, in Ecuador, is investigating Cristhian Bladimir Jumbo Angulo (Jumbo), Christian Andres Roman Zapatanga (Zapatanga), and Isabel Natalia Gonzalez Delgado (Delgado) and others (collectively, the subjects) for money laundering, which occurred in or about between 2019 to the present, in violation of the criminal law of Ecuador, specifically, Article 317 of the Organic Code of Criminal Procedure. Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Ecuadorian authorities, beginning in 2019, Jumbo, as the principal representative and 94% shareholder of PIPMASTER CIA. LTDA. (PCL), an Ecuadorian company, defrauded Ecuadorian investors (victim investors) by promising installation of a stock market investment computer tool, PIPCALPING 3.0 (PIPSCALING tool), and access to financial advisors for a minimal investment of 300 USD in the stock market with PCL bearing full financial responsibility for trade losses and providing a minimum 30% annual return in monthly payments. The victim investors received "investment certificates" in exchange for the 300 USD principal investment. Most notably, PCL promised 0% risk to the victim investors. The investment fraud scheme generated approximately 30,573,148 USD in revenue for PCL and 4,815,223 USD for Jumbo.

4. The victim investors signed contracts with PCL. The contract stated that PCL would provide the PIPSCALING tool and access to regulated investment advisors as long as the financial investment in the trade account was between 300 USD and 60,000 USD. Among other representations, the contract specifically stated that "[PCL] is legally registered in the Superintendence of Companies - Securities and Exchange, under file No. 318195, with ITIN No. 2390055032001 and authorization for main economic activity K661100 and tributary address in

Santo Domino – Ecuador."

5. During the investigation, Ecuadorian authorities learned that the PIPSCALING tool was neither registered with the proper Ecuadorian authorities nor installed by PCL on the clients' computers. Further, PCL failed to provide investment advisors to its clients. Most significantly, Ecuadorian authorities obtained certifications from the competent Ecuadorian agencies that monitor entities that provide investment brokerage services. These agencies are the Superintendency of Companies - Securities and Insurance (SCSI), the Superintendent of Banks of Ecuador (SBE), and the Stock Market and Brokerage Houses (SMBH). The certifications revealed that PCL did not possess the proper licenses and authorizations to offer brokerage services. Additionally, the certifications stated that PCL failed to invest the victim investors' funds in the national or international market.

6. In August 2020, SCSI notified PCL that it was aware of the aforementioned conduct, requesting that PCL provide justification for its business operations. In 2021, SCSI issued a public statement, informing the Ecuadorian public that PCL was not authorized to provide brokerage services in the stock market. Jumbo offered to dissolve PCL voluntarily. However, SCSI rejected the offer, and in its official capacity, it dissolved and liquidated PCL. Further, after the dissolution of PCL and SCSI's public statement, PCL was no longer allowed to open new bank accounts, and Jumbo could not deposit clients' funds in his personal bank accounts.

7. Before and after its official dissolution, Ecuadorian authorities assert that Jumbo and PCL engaged in an intricate layering money laundering scheme to disperse and legitimize the illegally obtained revenues from the investment fraud scheme by forming additional legitimate entities in Ecuador with different business purposes as well as continuing to offer

investment broker services to the Ecuadorian public and transferring those funds to Pipmaster World, LLC (PW), located in the United States.  PW registered as a limited liability company in Florida on June 7, 2021, with an address of Santo Domingo De Los Colorados which is in Ecuador.  On April 27, 2022, PW filed an annual report with the Division of Corporations, Florida Secretary of State.

8. On September 9, 2020, before the official dissolution of PCL, Ecuadorian authorities assert that Jumbo, along with Zapatanga, an associate, and Delgado, his wife, and other relatives, associates and entities, used funds from the PCL investment fraud scheme along with funds from civilian investors to create fourteen legitimate companies in Ecuador to launder the revenues from the PCL investment fraud scheme.  These companies do not offer brokerage services.  The business purposes include teacher training, coffee production, residential and commercial real estate construction, etc.  Despite the subjects' claim to the civilian investors that the entities would be profitable, all companies reported losses to SCSI at the end of fiscal year 2021.

9. In 2022, in Ecuador, Jumbo formed another ten companies using former PCL employees as the shareholders to hide his connection to the organization of the companies.  Nine of these companies were formed on the same day, January 20, 2022, and the remaining company was formed on March 24, 2022.  During the investigation, Ecuadorian authorities interviewed former PCL employees, and they revealed that Jumbo asked for permission to use their names to form the companies, explaining that he would maintain control of management and accounting.

10. Additionally, Ecuadorian authorities contend that Jumbo, as the sole member-manager of Pipmaster World, LLC (PW) in the United States, continues to offer investment broker services to the Ecuadorian public and transfers the revenues to financial or bank accounts

in the United States that are connected to PW.

11. During the investigation, Ecuadorian authorities conducted searches at PCL's offices in the provinces of Santo Domingo and Francisco de Orellana in Ecuador as well as another thirty-five places connected to the investigation. In the searches, Ecuadorian authorities obtained evidence which established PW's existence and its financial or bank accounts in the United States. The evidence revealed that PW is the account holder of financial or bank accounts at the following entities in the United States: (1) Wise, Inc., in New York (account number xxxxx3412), (2) Pichincha Bank – Miami, in Florida (account number unknown); (3) Mercury – Wells Fargo and Company (www.mercury.com) (account numbers xxxxxxx3665 and xxxxxxxxxxxxxxxxxxxxxxxxxxxA174); (4) Barclays Bank, in New York (account number unknown); and (5) Evolve Bank and Trust, in Florida (account number xxxxxx5828).

12. To further the investigation and trace the transfer of the revenues generated from the investment fraud scheme, Ecuadorian authorities have asked U.S. authorities to obtain: (1) official records, held by state and/or federal agencies which may require service of a subpoena to authorize disclosure of these records, pertaining to whether PW has the authority to perform investment broker services in the United States on stock market exchanges and (2) bank or financial records pertaining to accounts held at entities listed in paragraph 9 in the United States.

## LEGAL BACKGROUND

13. A treaty[2] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a

---

[2] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968). A multilateral convention is a treaty under U.S. law.

14. When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*       \*       \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*       \*       \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

15. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen.

Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[3]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

16.    An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[4] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[5]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[6] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  *See* 18

---

[3] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[4] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[5] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[6] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

17.     Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

REQUEST FOR ORDER

18.     The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the Attorney General's Office, the designated Central Authority in Ecuador, and seeks assistance in the investigation of money laundering in Ecuador.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., production of official and bank records, falls squarely within that contemplated by Section 3512 and the Treaty.  Finally, this application was properly filed in the District of Columbia.

19. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

20. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

21. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to

collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

                                              Respectfully submitted,

                                              VAUGHN A. ARY  
                                              DIRECTOR  
                                              OFFICE OF INTERNATIONAL AFFAIRS  
                                              OK Bar Number 12199

By:           *Angela S. George*  
                                              Angela S. George  
                                              Trial Attorney  
                                              D.C. Bar Number 470567  
                                              Office of International Affairs  
                                              Criminal Division, Department of Justice  
                                              1301 New York Avenue, N.W.  
                                              Washington, D.C. 20530  
                                              (202) 514-4653  
                                              Angela.George@usdoj.gov